# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## NORTHERN DIVISION

| | |
|---|---|
| VAUGHN GARY MAXFIELD, | 1:18-CV-01006-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING MOTION TO DISMISS, DENYING MOTIONS TO APPOINT COUNSEL, DENYING MOTIONS TO COMPEL DISCOVERY, AND DISMISSING SECOND AND THIRD AMENDED COMPLAINTS IN PART |
| TONY LARSON, COURT SERVICE OFFICER, INDIVIDUAL AND OFFICIAL CAPACITY; GARRETT ORTMEIER, DIRECTOR OF COURT SERVICES, INDIVIDUAL AND OFFICIAL CAPACITY; JAMIE HARE, JAIL COMMANDER, INDIVIDUAL AND OFFICIAL CAPACITY; JOSH BOLL, SHERIFF DEPUTY, INDIVIDUAL AND OFFICIAL CAPACITY; JUSTIN YOUNGWIRTH, SHERIFF DEPUTY, INDIVIDUAL AND OFFICIAL CAPACITY; KYLIE FRANKLIN, LIEUTENANT, INDIVIDUAL AND OFFICIAL CAPACITY; PATTY DUNWOODY, SERGEANT, INDIVIDUAL AND OFFICIAL CAPACITY; CINDY STRONGHEART, C/O, INDIVIDUAL AND OFFICIAL CAPACITY; COUNTY OF WALWORTH, INDIVIDUAL AND OFFICIAL CAPACITIES; GLEN ULLIN, C/O, INDIVIDUAL AND OFFICIAL CAPACITY; EDDIE RICE, C/O, INDIVIDUAL AND OFFICIAL CAPACITY; AARON VOGEL, SHERIFF DEPUTY, INDIVIDUAL AND OFFICIAL CAPACITY; MOBRIDGE, INDIVIDUAL AND OFFICIAL CAPACITY; AND SELBY, SD, INDIVIDUAL AND OFFICIAL CAPACITY; | |
| Defendants. | |

Plaintiff, Vaughn Gary Maxfield, filed this pro se lawsuit under 42 U.S.C. § 1983. Docket 1. The court previously granted Maxfield's motion for leave to proceed in forma pauperis (Docket 8) and granted Maxfield's motion to amend. Docket 14. On May 9, 2018, Maxfield filed a second amended complaint. Docket 17. On July 25, 2018, defendants Tony Larson and Garrett Ortmeier moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Docket 25. On October 4, 2018, defendants Jamie Hare, Josh Boll, Justin Youngwirth, Aaron Vogel, Kylie Franklin, Patty Dunwoody, Cindy Strongheart, Glen Ullin, Eddie Rice, and the County of Walworth (hereinafter the County Defendants) filed an answer to Maxfield's second amended complaint. Docket 42. In their answer, the County Defendants argue that Maxfield's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). *Id.*; *see also* Docket 43. Maxfield opposes dismissal. Dockets 36, 46.

On November 23, 2018, Maxfield filed a third amended complaint. Docket 60. Defendants move to strike the third amended complaint. Docket 64. Maxfield has also filed various miscellaneous motions. Dockets 27, 40, 57, 71, 74.

## FACTUAL BACKGROUND

Maxfield alleges that on May 13, 2017, he was traveling to Sioux Falls for a scheduled reconstructive surgery on his hand when he was stopped on the

interstate, arrested, and charged with ingestion. Docket 17 at 5.[1] The next day, he alleges that he informed Lieutenant Kylie Franklin of the Walworth County Jail that his left hand and arm were broken and he had a scheduled surgery. *Id.* at 6. He also claims that he told Franklin about his mental health history and what medications he needed to take. *Id.* He alleges that Franklin repeatedly ignored him, taunted him, and refused to give him pain medication or mental health medication. *Id.*

Maxfield states that Eddie Rice placed him in the solitary housing unit (SHU) on May 26, 2017. Docket 60 at 6. He claims that he asked Rice for Ibuprofen and a wrap for his arm, but Rice refused, claiming that Maxfield had faked his injury. *Id.* He alleges that he was "blackboxed" during court hearings despite his broken hand and arm, while others were handcuffed, and Jamie Hare, the State's Attorney for Walworth County, knew about his injury. Docket 17 at 7.

In June 2017, Aaron Vogel transported Maxfield to Mobridge Regional Hospital where he received an X-ray. *Id.* at 8; Docket 60 at 8. Maxfield notes that Vogel refused to remove Maxfield's handcuffs while a nurse examined his arm, but he did remove the handcuffs for Maxfield's X-ray. Docket 60 at 8-9. He alleges that he was given medical care too late because the nurse explained to him that his left arm healed on its own incorrectly and it could only be

---

[1] Maxfield's third amended complaint is largely similar to the second amended complaint, but he sometimes provides additional factual allegations in the third amended complaint. Docket 60. The court will cite to Docket 60 when additional relevant facts are presented.

corrected if the bone were rebroken. Docket 17 at 8. And despite the nurse's note approving him for Ibuprofen, Maxfield claims that Franklin still refused to give him Ibuprofen when he returned to the jail. *Id.*

Maxfield claims that after he pleaded guilty to the charged offense, he was placed on probation for two years. *Id.* He then met Tony Larson, the court service officer assigned to supervise him during probation, who informed Maxfield numerous times that Maxfield must serve his probation sentence in Mobridge rather than going to Sioux Falls. *Id.* at 8-11. But Larson refused to give Maxfield permission to reside at certain places. *Id.* He was arrested more than once while on probation in Mobridge and claims such arrests were directed by Larson. *Id.* at 9, 11.

Maxfield was then arrested on July 15, 2017, and his BAC showed he was intoxicated. *Id.* at 11. He claims that Correctional Officer (CO) Eddie Rice placed him in general population despite his intoxication after informing Maxfield that he did not have time to place Maxfield in the drunk tank. *Id.* at 12. Maxfield then assaulted another inmate with a mop while intoxicated and claims it would not have happened if he were placed in the drunk tank instead. *Id.* He claims that he was then placed in segregation "indefinitely" at the direction of Franklin, where he was disciplined and denied his rights. *Id.*

On July 19, 2017, Maxfield claims he suffered from extreme tooth pain. *Id.* And when he begged for a medical kite, he claims that Glen Ullin told him he could not write medical kites or see medical personnel while under disciplinary action. *Id.*; Docket 60 at 15. He also alleges that jail personnel

refused his mental health medication requests. Docket 17 at 13. And he again alleges that Franklin refused him Ibuprofen. Docket 60 at 15. He claims that CO Cindy Strongheart warned him not to ask for his medication or he would be sent to Yankton, likely referring to the South Dakota Human Services Center. Docket 17 at 15. He also states that Franklin, Dunwoody, and Strongheart denied help to him to obtain his mental health medication. Docket 60 at 15.

He alleges that in September 2017, his tooth pain increased significantly. Docket 17 at 15. Dunwoody and Ullin, according to Maxfield, denied him saltwater and Ibuprofen for several hours. *Id.* A few days later, he finally saw a dentist, who removed a tooth, gums, and bone from his jaw due to an abscess that had formed and spread to the nerves in his mouth. *Id.* at 16; Docket 60-1 at 3.

In October 2017, Maxfield was transferred to the South Dakota State Penitentiary. Docket 17 at 16. He claims that the Walworth County officials did not submit his medication list or separation order regarding another inmate to the Department of Corrections (DOC), which resulted in an assault from that inmate once he arrived at the Penitentiary. *Id.* at 17.

## I. Defendants' Motion to Strike Third Amended Complaint

Defendants move to strike Maxfield's third amended complaint (Docket 60) because it was filed outside the time allowed by Rule 15, without their consent, without leave of court, and after defendants had filed motions to dismiss Maxfield's second amended complaint. Docket 64.

"A decision whether to allow a party to amend [his] complaint is left to

5

the sound discretion of the district court . . . ." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citations omitted). "A party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Motions to amend should be freely given in order to promote justice but may be denied when such an amendment would be futile. *Plymouth Cty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Here, Maxfield did not seek leave of court to file his third amended complaint. But because motions to amend should be freely given to promote justice, the court will consider the factual allegations in Maxfield's third amended complaint in conjunction with his second amended complaint to conduct a thorough screening analysis of all claims. Maxfield has provided more details in his third amended complaint that aid the court's analysis. Thus, defendants' motion to strike (Docket 60) is denied.

## II. Motions to Dismiss

### A. Standard of Review

When considering a motion to dismiss, the court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its

conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *see also Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

**B. Overview**

Maxfield has brought a civil rights claim under 42 U.S.C. § 1983. "Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (internal citation omitted). "The essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under the color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *L.L. Nelson Enters., Inc. v. Cty. of St. Louis*, 773 F.3d 799, 805 (8th Cir. 2012) (citing *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)).

**C. Court Service Officers**

The court service officers, Tony Larson and Garrett Ortmeier, move to dismiss Maxfield's claim under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and to dismiss the official capacity claims under the Eleventh Amendment. Docket 25. Larson and Ortmeier argue that they are entitled to absolute judicial immunity, claiming that a probation officer overseeing compliance by a probationer is performing a judicial function. Docket 26 at 4-5. They also argue that Maxfield has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 6.

### 1. Garrett Ortmeier

" 'Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.' " *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). Maxfield includes Ortmeier in his caption but fails to allege facts concerning how Ortmeier played any role in the alleged deprivation of his rights. Thus, Ortmeier is dismissed as a defendant in his individual capacity.

### 2. Tony Larson

#### a. Absolute Immunity

The court will next address if immunity shields Larson from liability. " '[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409,

419 n.13 (1976)). "Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate." *Id.* (citing *Patterson v. Von Riesen*, 999 F.2d 1235, 1237 (8th Cir. 1993)). But as the Supreme Court has noted, the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). Thus, the official seeking the application of absolute immunity "bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486.

Under the doctrine of qualified immunity, government officials are shielded from suits for money damages unless the plaintiff shows that the official's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity standard allows government officials to make "mistaken judgments" because it protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation omitted).

Qualified immunity is an immunity from suit rather than just a defense from liability, so the defense is lost if a case is erroneously permitted to go to trial. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Thus, immunity questions must be resolved "at the earliest possible stage in litigation[,]" preferably prior to discovery. *Id.* at 232 (internal quotation omitted).

Larson relies on *Hansen v. Kjellsen*, 638 N.W.2d 548 (S.D. 2002) in support of his argument that he is entitled to absolute immunity. In *Hansen*, Hansen alleged that Kjellsen, a court services officer, intentionally included false information in a presentence report, which resulted in a longer prison sentence for Hansen. *Id.* at 548-49. The trial court concluded that Kjellsen was entitled to absolute immunity and dismissed Hansen's complaint. *Id.* On appeal, the South Dakota Supreme Court acknowledged that the functional approach determines whether immunity is applicable to certain official conduct. *Id.* at 550 (citing *Forrester v. White*, 484 U.S. 219 (1988)). In affirming the trial court, the South Dakota Supreme Court noted that preparing a presentence report for a sentencing hearing "is an integral part of the sentencing process" and thus the court services officer "acts at the direction of the trial court." *Id.* at 549.

Under Eighth Circuit law, similar to what the South Dakota Supreme Court noted in *Hansen*, "[w]hether an official is cloaked with absolute or qualified immunity depends on the function performed by the official." *Nelson v. Balazic*, 802 F.2d 1077, 1078 (8th Cir. 1986). In *Evans v. Dillahunty*, 711 F.2d 828 (8th Cir. 1983), the Eighth Circuit held that parole officials determining whether to grant, deny, or revoke someone's parole were entitled to absolute immunity because they performed functions similar to those of judges. *Id.* at 830-31. But in *Ray v. Pickett*, 734 F.2d 370 (8th Cir. 1984), the Eighth Circuit concluded that a parole officer was only entitled to qualified immunity because the officer's actions were not "so intimately associated with

the judicial process" to "entitle[] probation officers to an absolute immunity." *Id.* at 373. The particular function at issue in *Ray* involved an allegation that a probation officer intentionally submitted a false report to the United States Parole Commission in order to obtain a parole violator's warrant. *Id.* at 371. The Eighth Circuit noted that under the functional approach, "certain adjudicatory or prosecutorial functions of a probation officer may be entitled to absolute immunity, while other functions, more administrative, supervisory, or investigative in nature, may warrant only a qualified immunity." *Id.* at 372. (citations omitted).

In *Ray*, the parole officer's function at issue was the filing of a report noting an apparent violation of conditions of parole. *Id.* The Eighth Circuit found that this particular function was not adjudicatory in nature, but "merely . . . trigger[ed] an inquiry by another officer that may or may not lead to an administrative proceeding." *Id.* at 373. In analyzing whether the parole officer's function was similar to that of a prosecutor initiating a criminal prosecution, the court noted that the filing of this report by one parole officer was "more akin to that of a police officer in deciding whether there is probable cause for an arrest . . . ." *Id.* at 374. Because submitting a parole violation report was not adjudicatory or prosecutorial, the court concluded that absolute immunity did not apply and remanded the case to the district court to consider the allegations under qualified immunity instead. *Id.* at 374-75; *see also Nelson*, 802 F.2d at 1079 (concluding that a parole officer's decision not to place a parolee in custody after learning that the parolee violated his parole

was not a quasi-judicial or prosecutorial function because the parole officer's function was analogous to a police officer determining whether there is probable cause to arrest).

Applying the functional approach, the court finds that Larson is not entitled to absolute immunity here. Maxfield alleges that Larson made him stay in Mobridge and filed documents leading to Maxfield's arrests during his time on probation. Docket 17 at 8-11. The various factual allegations in the second amended complaint against Larson are all based on Larson's supervision over Maxfield while his charges were pending and during probation. This supervisory function, including any filing of reports or requests for warrants based on suspected violations, is more akin to *Ray* than *Hansen*. Because the facts alleged against Larson are more similar to a police officer's function than an adjudicatory or prosecutorial function, absolute immunity does not apply. *Ray*, 734 F.2d at 374-75.

### b. Failure to State a Claim

Maxfield alleges that Larson directed him to stay in Mobridge and directed where he could live while in Mobridge during his probationary period. Docket 17.

Section 1983 relief is intended to remedy deprivations of federal constitutional or federal statutory rights. A plaintiff must allege a violation of a federal constitutional or statutory right to state a claim upon which relief can be granted. *Cooper v. Schriro*, 189 F.3d 781, 784-85 (8th Cir. 1999). In both the second amended complaint and third amended complaint, Maxfield fails to

assert facts against Larson that amount to a constitutional or statutory violation. Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to construct a legal theory that assumes facts that have not been pleaded. *Id.* Thus, the court finds that Maxfield failed to state a claim against Larson and the claim is dismissed against Larson in his individual capacity.

### D. Walworth County State's Attorney Jamie Hare

The Walworth County State's Attorney, Jamie Hare, moves to dismiss the claim against him based on prosecutorial immunity. Docket 43 at 4. Maxfield alleges that Jamie Hare ignored Maxfield's injured hand and arm when he was brought to court hearings. Docket 17 at 7-8. He also alleges that Hare failed to supervise the jail staff when they refused to respond to Maxfield's medical needs in the Walworth County jail. *Id.* at 13-14. "Prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of law." *Sample*, 836 F.3d at 916 (citation omitted). This protects prosecutors "against claims arising from their initiation of a prosecution and presenting a criminal case 'insofar as that conduct is intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

Maxfield has not alleged sufficient facts to show how Hare violated Maxfield's constitutional rights. Hare was not in charge of supervising the jail employees. And Hare's actions here—appearing at court hearings related to Maxfield's criminal case in Walworth County—were intimately associated with

the judicial phase of the criminal process. *Burns*, 500 U.S. at 486. Thus, Hare is entitled to absolute immunity for his role as State's Attorney for Walworth County and is dismissed as a defendant in his individual capacity.

### E. All Defendants in their Official Capacity

Maxfield has sued all defendants in their official capacity. Docket 17. The County Defendants all move for dismissal of the official capacity claims and the claim against Walworth County because Maxfield has not alleged that an official custom, policy, or practice violated the Constitution. Docket 43 at 3. A suit against a public employee in his or her official capacity is the legal equivalent of a suit against the governmental entity itself. *Bankhead v. Knickrehm*, 360 F.3d 839, 844 (8th Cir. 2004). In an official-capacity suit against a local government body, a plaintiff must show a constitutional right violation was caused by an official policy or widespread custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). A governmental entity is liable under § 1983 "only when the entity itself is a 'moving force' behind the violation." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987).

A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.* "At a minimum, a complaint must allege facts which would

14

support the existence of an unconstitutional policy or custom." *Doe*, 340 F.3d at 614.

Here, Maxfield has not identified a specific Walworth County policy or custom that caused any constitutional violation in the second amended complaint. In the third amended complaint, he asserts Walworth County "maintained policies, customs and procedures that show[] cruel and unusual punishment and deliberate indifference . . . ." Docket 60-1 at 16. He further alleges that Walworth County failed to adequately train jail staff and failed "to use decent care in supervising" staff. *Id.* These are only conclusory allegations and do not include any facts that support the existence of an unconstitutional policy or custom in Walworth County. Although a pro se complaint is liberally construed, it still must allege sufficient facts to support a claim. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Because Maxfield has failed to allege sufficient facts against Walworth County under the *Monell* standard, his claims against all defendants in their official capacities are dismissed.

### III. Screening under 28 U.S.C. § 1915A

The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A. The court must dismiss claims if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." *Id.* The court shall dismiss a claim "at any time if the court determines that [it] fails to state a claim on which relief may be granted . . . ." 28 U.S.C.

15

§ 1915(e)(2); 28 U.S.C. § 1915A(b)(1). Because the remainder of Maxfield's claims have not been screened, the court will screen those claims against all defendants even though defendants have already been served.

**A. Josh Boll**

" 'Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.' " *Clemmons*, 477 F.3d at 967 (quoting *Mayorga*, 442 F.3d at 1132). Maxfield states that Boll was in charge of overseeing and administering Walworth County jail operations (Docket 60 at 3) but fails to include any facts showing how Boll was personally involved in or directly responsible for any deprivations. Thus, Boll is dismissed as a defendant in his individual capacity.

**B. Deliberate Indifference to Medical Issue**

Maxfield alleges that Walworth County jail staff ignored his broken left hand, refused to give him pain medication or mental health medication, and delayed his ability to receive medical treatment. Docket 17; Docket 60. The court construes these allegations as claims for deliberate indifference to a medical issue and will address each defendant separately.

The Eighth Amendment prohibits deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Because Maxfield was a pretrial detainee, his claims fall under the Fourteenth Amendment rather than the Eighth Amendment, but the standard to show

deliberate indifference is the same. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Deliberate indifference may be established by "prison staff intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Dale v. Slyhuis*, 313 F. App'x 917, 918 (8th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05). A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. Von Wold*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotation omitted). In order to state a claim upon which relief can be granted, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). The plaintiff must show "(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.*

**1. Eddie Rice**

In the third amended complaint, Maxfield refers to being placed in the SHU by Rice on May 26, 2017 and alleges that Rice refused to give him Ibuprofen or a wrap for his arm. Docket 60 at 6. The court finds that Maxfield has not stated a claim for deliberate indifference to a medical need against Rice because refusing to provide pain medication or a wrap on a single occasion is not a constitutional violation. *See Barbee v. Corr. Med. Servs.*, 2010 WL

11583547, at *3 (E.D. Ark. Jan. 21, 2010) ("The occasional missed dose of medicine, without more, does not violate the Eighth Amendment."). Maxfield has not provided any factual support indicating that he had been prescribed Ibuprofen or a wrap for his arm as of May 26, 2017, or that Rice knew of the seriousness of his medical need.

### 2. Cindy Strongheart and Glen Ullin

Maxfield alleges that while he was in the SHU in late May 2017, he told Strongheart and Ullin he was in pain and asked for Ibuprofen. Docket 60 at 7. He states that they refused and told him that Franklin did not approve Maxfield for Ibuprofen. Docket 60 at 7. Maxfield fails to state a claim against Strongheart and Ullin because, again, a denial of Ibuprofen on one occasion does not amount to a constitutional violation. *See Barbee*, 2010 WL 11583547, at *3.

Maxfield also alleges that Strongheart denied helping him obtain mental health medication and told him not to ask for his medication. Docket 60 at 15-16. He also states that Strongheart taunted him. *Id.* at 18. None of these allegations amount to a constitutional violation.

### 3. Aaron Vogel

Maxfield alleges in the third amended complaint that Vogel transported him to Mobridge Regional Hospital but refused to remove Maxfield's handcuffs when the nurse asked. Docket 60 at 8-9. Maxfield adds that Vogel only removed his handcuffs for the X-ray. *Id.* Maxfield has failed to allege any facts showing how Vogel committed a constitutional violation.

18

### 4. Kylie Franklin

A broken arm can constitute an objectively serious medical need. Maxfield alleges he told Franklin that his arm was broken but she ignored his requests for medical treatment or pain medication. Docket 17 at 6. Such requests are sufficient to demonstrate that Franklin had knowledge of Maxfield's medical need. But he must also show that Franklin "knew of, yet disregarded an excessive risk to his health." *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997). He claims that when he did receive medical attention at Mobridge Regional Hospital six weeks later, the nurse told him that his arm had improperly healed on its own, they would have to rebreak his arm to correct it, and he had developed calcium deposits. Docket 17 at 8. The court construes this as a claim for deliberate indifference based on delay in treatment. *See Reed v. Weber*, 2010 WL 3363402, at *4 (D.S.D. Aug. 23, 2010).

"When . . . delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (internal quotation omitted). Maxfield's allegation that his arm improperly healed on its own during the delay in treatment is sufficient to state a claim against Franklin.

Maxfield also alleges that the nurse at Mobridge Regional Hospital approved him for Ibuprofen in June 2017, but Franklin refused to give him any pain medication once he returned to the jail. Docket 17 at 8. Taking these facts as true, Maxfield has stated a claim against Franklin for "intentionally

interfering with treatment once prescribed." *Dale*, 313 F. App'x at 918. Thus, Maxfield's deliberate indifference claim against Franklin for refusal to give him Ibuprofen after he was prescribed Ibuprofen survives initial review.

### C. Deliberate Indifference to Dental Care

The standard for deliberate indifference to dental needs is the same as the standard for deliberate indifference to a medical issue. The Eighth Circuit has noted that a three-week delay in providing an inmate with dental care when the prison official has knowledge of the inmate's pain can support an Eighth Amendment claim. *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995).

In his second amended complaint, Maxfield alleges that he developed intense tooth pain on or about July 19, 2017, but defendants refused to provide him with dental assistance. Docket 17. While he does not name individual defendants in the second amended complaint, he does provide references in the third amended complaint.

He claims that he asked for a medical kite, but Ullin told him he "could not be seen by medical or write a medical kite while under disciplinary action." Docket 60 at 15. He also claims that Franklin refused to allow him out of segregated confinement during the time that he requested dental assistance and Franklin refused to give him Ibuprofen. *Id.* at 15-17. He claims that Justin Youngwirth gave him salt water but refused to give him Ibuprofen for his tooth pain. *Id.* at 17. And even once he returned to general population in August 2017, he asserts that Dunwoody hardly added any salt to the salt water solution and limited him to salt water once a day. *Id.* at 18. In September 2017,

Maxfield was finally examined by a dentist. The dentist removed a tooth, gums, and bone from his jaw, and informed Maxfield that an abscess had formed then spread to his nerve. Docket 60-1 at 3. Construing Maxfield's allegations liberally, the court finds that Maxfield's claim for deliberate indifference to his dental needs survives initial review. This includes any denial of pain medication, diluted/limited salt water claims, and the delay in having a dental examination. Because the level of involvement of each defendant is unclear, the court finds that Maxfield has stated a plausible claim for deliberate indifference to dental needs against Franklin, Ullin, Youngwirth, and Dunwoody.

### D. Protection from Inmate Assault

Maxfield states that he was arrested on July 15, 2017 for intoxication. Docket 17 at 12. He claims that instead of placing him in the drunk tank until the alcohol left his system, Rice placed Maxfield in general population, which resulted in Maxfield assaulting another inmate. *Id.*

Under the Eighth Amendment, prison and jail officials must ensure "reasonable safety" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). This includes a duty to protect prisoners from assaults by other prisoners. *Id.* at 833. To establish a constitutional violation, a prisoner must show that the prison official (1) knew an inmate faced a substantial risk of serious harm and (2) deliberately disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 848; *see also Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005) (stating that a pretrial detainee's § 1983 claim is analyzed under the

Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment, but the same deliberate indifference standard applies).

Maxfield fails to allege that Rice knew Maxfield faced a substantial risk of serious harm in general population. There is no indication that Rice was aware that Maxfield may assault another inmate in general population. He also fails to allege how Rice placing Maxfield in general population while intoxicated caused Maxfield to assault another inmate. Thus, Maxfield fails to state a claim against Rice.

Maxfield also states that after he was sentenced, he was transported to the DOC on October 10, 2017. Docket 60-1 at 10. He alleges that Walworth County officials did not include his medication list or a separation order regarding another inmate in their file to the DOC, and thus he was involved in an assault at the DOC. *Id.* Neither the failure to include his medication list nor the failure to include a separation order state a claim upon which relief can be granted because Maxfield has not alleged that the Walworth County officials deliberately disregarded a substantial risk of serious harm. *Farmer*, 511 U.S. at 848; *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("Mere negligence . . . [is] insufficient to rise to a constitutional violation.").

### E. Conditions of Confinement

Changes in conditions of confinement are analyzed under the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). To state a due process claim arising out of prison discipline, a prisoner must establish either (1) that he has a liberty interest protected by the due process clause itself, or

(2) that he has a liberty interest created by state law and the prison action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.* at 484. The Eighth Circuit has "consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (citation omitted). The Eighth Circuit has also affirmed dismissal of a Due Process claim on screening because thirty days in punitive segregation is not an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065-66 (8th Cir. 2002).

The court will first consider whether Maxfield alleges any facts that could constitute an atypical and significant hardship related to the length of his segregated confinement. Maxfield alleges that after he assaulted another inmate in July 2017, Franklin ordered Maxfield to segregation, where he stayed for 33 days. Docket 17 at 12. He does not describe any conditions of the change in segregation, and he has not provided any factual allegations showing how the change in confinement in response to him assaulting another inmate was an atypical and significant hardship. Thus, the court finds that Maxfield has failed to allege sufficient facts to state a claim against Franklin for directing him to segregation in response to Maxfield assaulting another inmate.

Maxfield alleges that while in segregated confinement, he was denied books, recreation time, and the grievance procedure. Docket 60 at 16; Docket 60-1 at 9. Other than this conclusory statement, Maxfield provides no additional factual information. The Eighth Circuit has indicated that a loss of

privileges during segregated confinement does not create an atypical and significant hardship. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (concluding that a denial of exercise privileges during 37-day confinement was not an atypical and significant hardship). Thus, even if Maxfield had provided additional factual support, as a matter of law, he has not stated a due process claim related to the conditions in segregated confinement.

### F. Deprivation of Food

Deprivation of food for a substantial period of time can be a constitutional violation. *Simmons v. Cook,* 154 F.3d 805, 807 (8th Cir. 1998); *see also Farmer*, 511 U.S. at 832 ("[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care."). In *Simmons*, the Eighth Circuit concluded that paraplegic prisoners who missed four consecutive meals because their wheelchairs could not reach the food tray slots had a constitutional claim. *Simmons*, 154 F.3d at 808. Prisoners also have the right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). In his third amended complaint, Maxfield alleges that Dunwoody delivered him smaller portions while in segregated confinement "a few times." Docket 60-1 at 8-9. He has not alleged that he missed any meals or that any of his meals were nutritionally inadequate. Thus, Maxfield has failed to state a claim upon which relief can be granted for smaller food portions.

### IV. Motions to Appoint Counsel

Maxfield moves the court to appoint counsel. Dockets 27, 40, 57. "A pro se litigant has no statutory or constitutional right to have counsel appointed

in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant's civil case, the district court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the indigent's ability to present his claim. *Id.* Maxfield's claims are not complex, and he appears to adequately present his § 1983 claims. Thus, his motions to appoint counsel (Dockets 27, 40, 57) are denied.

## V. Motions for Order Compelling Discovery

Maxfield moves for an order compelling discovery under Fed. R. Civ. P. 37(a). Dockets 71, 74. In his first motion, Maxfield requests an order compelling Tony Larson and Garrett Ortmeier to produce contents of his Unified Judicial System court service file. Docket 71. Because Larson and Ortmeier are dismissed as defendants for failure to state a claim, Maxfield's motion (Docket 71) is denied as moot.

In his second motion, Maxfield requests an order compelling defendants to produce evidence that they are relying on in this case, including but not limited to, statements, audio, or video recordings. Docket 74. Federal Rule of Civil Procedure 37(a)(1) provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

*Id.*

Maxfield has not included a certification that he has in good faith attempted to confer with defendants regarding discovery. He states in his motion that he submitted a request to defendants but has not yet received a response. Docket 74 at 2. His motion appears premature. Thus, Maxfield's motion to compel discovery (Docket 74) is denied.

**CONCLUSION**

It is

ORDERED

1. Defendants' motion to strike Maxfield's third amended complaint (Docket 64) is denied.

2. Defendants Garrett Ortmeier and Tony Larson's motion to dismiss (Docket 25) is granted on the basis of Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Ortmeier and Larson are dismissed without prejudice under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A.

3. Maxfield fails to state a claim against Walworth County State's Attorney Jamie Hare, and Hare is dismissed as a defendant with prejudice.

4. All defendants in their official capacity and Walworth County's motion to dismiss (Docket 42) is granted on the basis of Fed. R. Civ. P. 12(b)(6) for failure to state a claim. All defendants in their official capacities are dismissed with prejudice.

5. Maxfield fails to state a claim upon which relief may be granted against Josh Boll, Eddie Rice, Cindy Strongheart, Aaron Vogel, Mobridge, and Selby, SD, and they are all dismissed as defendants without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. Maxfield states a claim of deliberate indifference to a medical issue against Kylie Franklin under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. Maxfield states a claim of deliberate indifference to dental care claim against Glen Ullin, Justin Youngwirth, Patty Dunwoody, and Kylie Franklin under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1).

8. Maxfield's motions to appoint counsel (Dockets 27, 40, 57) are denied.

9. Maxfield's motions to compel discovery (Dockets 71, 74) are denied.

Dated March 6, 2019.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE